## VAN RENSSELAER *vs.* POUCHER.

Where a party is bound to give *oyer* of a deed, he must furnish not only a true copy of

the instrument itself, but of all endorsements and memoranda upon it and of all papers, attached to it, so that his adversary may have the same view of the matter as if the deed had been brought into court.

A *stranger* to a deed is not bound to give oyer; the rule applies only to *parties* or *privies*, and even privies in estate cannot be required to give oyer unless they come in *conventionally*. If they become privies by the acts of others, or mere *operation of law*, they are not bound to give oyer.

[ *317 ]    *DEMURRER to plea.  The plaintiff (Jeremiah Van Renssaler) declared in *covenant* for rent due on a lease in fee, reserving rent executed by one *John Van Rensselaer*, an ancestor of the plaintiff, to one *Andries Muller*, on the 20th November, 1759.  The plaintiff averred that the demised premises came by assignment to the defendant, and that since the accruing of the estate of the plaintiff, the sum of $2000 rent had become due and was in arrear.  He set out his own estate, by averring that after the execution of the lease, to wit, on the 25th May, 1782, the lessor made his last will and testament, and devised all his interest in the demised premises and in the rents reserved by the lease to trustees, for and during the life of his *grandson, John Van Rensselaer*, in trust, to permit his grandson to receive the rents and profits during his life ; and from and after the decease of his grandson, he devised all his interest in the premises and rents to the *first son* of the body of his grandson, and to the heirs male of the body of such first son lawfully issuing ; and for default of such issue, then to the second, third and every other son of his grandson successively, and in remainder the one after the other in seniority, and to the several and respective *heirs male* of the bodies of such first and other sons ; that the lessor died in 1783 ; that John I. Van Rensselaer, the grandson, had a first born son who died intestate and without ever having had issue, in the life-time of his father, to wit, in 1813 ; that he, the plaintiff in this cause, was the *second born son* of John I. Van Rensselaer, who departed this life on the 26th September, 1828 ; whereupon he, the plaintiff, became entitled to demand and receive the rents, &c.

The defendant *pleaded*, that John Van Rensselaer, the *testator*, at the time of the making of his will, was seized of a large tract of land called the *Claverac estate*, including the demised premises ; that after his death, to wit, on the 29th December, 1783, John I. Van Rensselaer entered and became seized in his demesne as of freehold of the said estate ; and on 4th November, 1794, entered into an *executory contract* for the sale and conveyance of such estate to one *Daniel Penfield*, and subsequently by lease and

[ *318 ]    release, *bearing date the 31st December, 1794, and 1st January, 1795, granted and conveyed the *Claverac estate*, including the demised premises and the rents thereon reserved to *Penfield*, who by a certain *indenture* executed by him, bearing date 15th October, 1806, (with cer-

tain schedules thereto annexed and therein referred to, containing a list of divers farms and parcels of land in the said indenture mentioned, together with divers deeds of indenture, reserving certain annual rents thereon executed therefor, by Hendrick Van Rensselaer and John Van Rensselaer, ancestors of John I. Van Rensselaer, and also by the said John I. Van Rensselaer and Daniel Penfield, and of the rents so reserved; and which said farms and parcels of land, and the deeds of indenture reserving annual rents as aforesaid, and the rents therein and thereby reserved, *are in no way connected with* or parcel of the premises, deed of indenture or rents in the several counts of the plaintiff's declaration mentioned; *and which above mentioned indenture, sealed with the seal of the said Daniel Penfield, together with so much and all such parts of said schedule thereto annexed and therein referred to as aforesaid, as contain a description of the lands, premises, deed of indenture or rents in the said several counts of the said declaration mentioned or any part thereof, or as refer to the same or any part thereof or as are in anywise connected with or parcel of the same or any part thereof, the said defendant now brings here fully and freely into court, the date whereof is the day and and year last aforesaid,*) granted and conveyed the *Claverac* estate (including the demised premises, and the rents thereon reserved) to *John Watts,* who, by his last will and testament, bearing date 30th May, 1836, devised the *same estate,* including the demised premises and rents in question to *trustees* for the benefit of his grandson. The defendant further averred, that John I. Van Rensselaer had a *first born son* named John Van Rensselaer, who was born 1st May, 1791, after the passage of the act of the legislature of this state *to abolish entails;* that such *first born son,* before and at the time of his death, having acquired an estate in *tail male,* was, under and by virtue of the statute in such case made and provided, *vested with and entitled to an absolute right*           [ *319 ]
*and interest in fee simple, in expectancy, in and to the rents in*
question; that such *first born son* died without lawful issue on the 1st August, 1813, leaving his father him surviving, to whom the rents in question *descended,* and in whom they vested as *heir at law* to his said first born son; and upon such descent of the remainder in fee simple of the rents, *the same enured* to the benefit of, and passed, and was attached to the estate conveyed by John I. Van Rensselaer to *Daniel Penfield,* and by the latter to *John Watts,* so that the trustees under the will of John Watts now are seized of and entitled to a full absolute estate, right and interest *in fee simple* in and to the rents reserved out of the premises in the several counts of the plaintiff's declaration mentioned, subject only to the trusts created by the last mentioned will. The plea then concluded with a verification and prayer of judgment.

To this plea the plaintiff *demurred*, stating for cause : that the defendant should have made a *profert* of the deed executed by *Penfield*, together with *all the schedules thereto annexed* and therein referred to, and not of so much only and such parts of the schedules as, in the opinion of the defendant or his counsel, contain a description of the lands, premises, deed of indenture or rents in the several counts of the declaration mentioned.

*J. Blunt*, for the plaintiff.

*A. L. Jordan & G. Wood*, for the defendant.

*By the Court*, COWEN, J.  It is perfectly well settled that on oyer demanded, the party making *profert* must furnish a copy of the whole deed, including the attestation clause, witnesses, memoranda written at the bottom, and the like.   In short, the act of furnishing a copy should be made, as nearly as possible, equivalent to the ancient practice, which was to bring the deed itself into court, where it continued a whole term for the party demanding oyer to inspect it as much as he pleased.  *Shep. Touch*. 73.
[ *320 ]   *Longmore* v. *Rogers*, *Willes*, 288; *Barnes*, 283, *S. C.*; *nom. Longman* v. *Rogers*.   *Comyn's Dig. Plead.* (*P.* 1.)  This is highly reasonable ; for a deed may be much varied or qualified, indeed its meaning entirely changed by papers endorsed, written below or annexed to it.  The party in *pleading* it is never required to set out the whole deed, but only such parts as tend to make out his case, and these not literally, but only according to their legal effect.   Allowing him to judge what portions that remain are material for his adversary to see, would subject the latter to the decision of a very partial judge.   The profert must be commensurate with the obligation ; and it follows that it should have been general in this plea, including the schedules which make part of the deed, provided the defendant was bound to give oyer at all.

Whether the defendant was under obligation to give oyer in this case is the more material question.   If he was not, his making *profert* will not raise an obligation.   A stranger to a deed is not bound to give oyer ; it is only a party or privy to the deed or to some estate or interest, affected by it, or one coming in and claiming in right of another who is a party or privy, who must do so, *Shep. Touch*. 73.   Indeed the obligation can hardly be said to rest in all cases on mere privity.   It seems rather to depend on the question whether the party pleading has come in *conventionally* as a privy, thus having it in his power to obtain the deed itself, or at least to provide for having the use of it whenever it may be necessary in an action or defence.   It is not necessary to go over the cases.   They are all collected in the later editions of *Comyn's Digest*.   *See Pleader*, (*O.* 8,) and (*O.* 9.)   A series of cases are there cited which are entirely conclusive against the demurrers in ques-

tion. The deed from *Penfield* raised a privity of estate between the grantee Watts, and the defendant, which was continued between the defendant and the trustees under Watts' will; but this was by *operation of law*. The defendant held no control over *Van Rensselaer*, the devisee, or Penfield, the purchaser. The estate held by each in the rent charged on the defendant's land was transferrable at their pleasure, and would raise the relation of landlord and tenant between *them and the defendant for [ *321 ] the time being; and that relation has finally been transferred to the trustees under the will of Watts. But it is impossible for the defendant to obtain the deeds of transfer or even a copy, without the consent of those who may have a right to them. The deed in question belongs to the trustees under Watts' will, who may entirely withhold it from the defendant. There is no authority, at least no modern authority, and none that has not been overruled, which would require this defendant to give oyer under such circumstances. On the contrary, several cases are cited by *Comyn* where persons who come in as privies by operation of law have been excused from giving oyer of the deeds under which they claimed : among them are guardians, tenants by statute merchant, staple or elegit, or in dower, and several stronger cases; though it is said a tenant by the curtesy pleading the deed of his wife must give oyer of that, though he is in by act of law; for he shall be presumed to have it in his power. These instances are sufficient to illustrate the distinction; and at the same time to show the clear and strong reason on which it stands. *See also Viner's Ab. Faits (M. a. 14,)* and *(M. a. 15,)* and *Co. Litt.* 225, *a.* and 225, *b.* A deed lost by accident may be pleaded even by a party to it, without profert. *Read* v. *Brookman*, 3 *T. R.* 151. The principle of that case lets in the like mode of pleading whenever it appears that the deed is beyond the party's reach. There must be judgment for the defendant on the demurrers, with leave for the plaintiff to withdraw them, and reply on the usual terms.

---

*Davis and others *vs.* Shields. [ *322 ]

A broker's memorandum is good, although no name be *subscribed* to it; the substitution of the word *subscribed* in the revised statutes for the word *signed* used in the old statute, does not change the law. It is enough that the names of the parties intended to be bound appear *in the body of the memorandum.*

Where a sale is made through the intervention of a *broker* and in his *memorandum* terms of sale advantageous to the *purchaser* are omitted, it does not lie with the *vendor* to object to the memorandum in an action against him for the non-delivery of the property.

The rule of damages for the non-delivery of chattels sold is the market price on the day ap-